**IN RE: Rocky Rene WHITE, Debtor.**

**Jason Pettie, as Chapter 7 Trustee for the Estate of Rocky Rene White, Plaintiff,**

v.

**Kevin Ringo and Shechem Industries, Inc., Defendants.**

**CASE NO. 14–65320–WLH
ADVERSARY PROCEEDING
NO. 15–05421–WLH**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed August 2, 2016

Jason L. Pettie, Decatur, GA, pro se.

Terrence Shannon, Terrence Shannon, P.C., Porterdale, GA, for Plaintiff.

Robert Jackson Wilson, Robert Jackson Wilson, P.C., Lawrenceville, GA, J. Michael Lamberth, Lamberth, Cifelli, Ellis & Nason, P.A., Atlanta, GA, for Defendants.

## ORDER ON SHECHEM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Wendy L. Hagenau, U.S. Bankruptcy Court Judge

This matter is before the Court on Shechem's Motion for Partial Summary Judgment ("Motion") (Docket No. 42). The Court finds this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), and the Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

## PROCEDURAL BACKGROUND

Debtor Rocky White ("Debtor") filed his voluntary petition under Chapter 7 of the Bankruptcy Code on August 5, 2014. Plaintiff Jason Pettie, as Chapter 7 trustee for the estate of Debtor ("Plaintiff"), filed this Adversary Proceeding on October 30, 2015 against Shechem Industries, Inc. ("Shechem") and Kevin Ringo ("Ringo") ("Complaint"). In the Complaint, Plaintiff sought to avoid Debtor's transfer of his interest in certain business entities and real property, and sought the payment of a two million dollar debt allegedly owed to Debtor by Shechem. The Complaint alleges the debt should be paid under the theories of turnover, open account and unjust enrichment.

Shechem filed the Motion on June 6, 2016 seeking summary judgment on Counts 7, 8, and 9 of the Complaint, which are the claims for turnover, open account, and unjust enrichment, respectively (Docket No. 42). Plaintiff filed a response on June 27, 2016, arguing that certain agreements created obligations owed by Shechem to Debtor that survived the execution of the subsequent agreements (Docket No. 48). Shechem filed a reply on July 8, 2016 (Docket No. 58).

## UNDISPUTED FACTS

The Debtor was involved in the development of a technology to treat wastewater which is referred to by the parties as the NJUN System. Joe Forrester ("Forrester") had experience in product manufacturing and had an interest in learning about wastewater treatment technology. Through his acquaintance with Keith Moore, Forrester became aware that Ringo was involved with the NJUN System. After being exposed to the NJUN System, Forrester formed Shechem with the intention of monetizing the value of the NJUN System. On December 22, 2009, Shechem and NJUN–One LLC ("NJUN–One") entered into a contract that granted Shechem rights to install NJUN Systems throughout the state of Georgia for a fee of $600,000.

In the spring of 2010, Shechem had made its last payment under the agreement with NJUN–One. However, the NJUN System was not yet ready for market. The NJUN System needed additional development, and regulatory approval still needed to be obtained. Ringo requested additional funds, and further negotiations took place between Shechem, Ringo, and NJUN–Southeast ("NJUN–SE"). On June 3, 2010, Shechem negotiated a second agreement with NJUN–SE and Ringo that provided Shechem with the right to supply products associated with the NJUN wastewater system throughout six other states in the southeast ("Six States Agreement"). In exchange for the rights to supply these products, Shechem would pay NJUN–SE a Territory Fee of thirty million dollars. The Territory Fee would be paid in part in monthly installments. For the first year, the payments were at least $50,000 per month, and thereafter the payments were based on monthly sales.

The Territory Fee was also partially satisfied by Shechem purchasing real

property located at 1390 Hillside Drive, Grayson, Georgia ("Hillside Property") and leasing the property "to [Debtor] at the express direction of NJUN–SE." The Six States Agreement further provided that Shechem had obtained a mortgage "in connection with the purchase of the property" and that Shechem "shall be responsible for satisfying the terms of the [mortgage] in full". Under the Six States Agreement, Shechem could retain $250 of each monthly payment based on sales to pay on the mortgage. The Six States Agreement also provided that Shechem "shall transfer ownership of the property to [Debtor] within sixty (60) days of the [mortgage] having been satisfied in full", at which time Shechem would be entitled to a two million dollar credit towards the fee Shechem owed NJUN–SE under the Six States Agreement. A lease was entered on June 3, 2010 between Shechem and Debtor, providing that Debtor would live in the property rent free while Shechem paid the mortgage on the property and that Debtor would pay taxes, insurance, and any homeowner association fees on the Hillside Property during the term of the lease ("Lease Agreement").

On June 14, 2013 Shechem entered into a Patent License Agreement ("PLA") with NJUN, LLC, NJUN Holding, LLC, NJUN–One, NJUN–SE, and Ringo. The PLA included a provision stating explicitly that the PLA was intended to supersede the Six States Agreement. On the same day, NJUN, LLC, NJUN–SE, Ringo, Shechem, and Debtor entered into an agreement terminating the Lease Agreement between Shechem and Debtor ("Lease Termination Agreement"). On December 27, 2013, the same parties entered into a revised lease termination agreement ("Revised Agreement") that acknowledged the termination of the lease provided for in the Six States Agreement and also provided for the sale of the property. The language of the Revised Agreement expressly superseded the previous Lease Termination Agreement while affirming that the Lease Agreement was terminated as of June 14, 2013.

## ANALYSIS

### Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

The party moving for summary judgment has "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir.1991) (citing Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553). What is required of the moving party,

however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

> When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim' (cites omitted) in order to discharge this 'initial responsibility'. Instead, the moving party simply may 'show—that is, point out to the. . . . court—that there is an absence of evidence to support the non-moving party's case, (cites omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Four Parcels of Real Prop., 941 F.2d at 1437 (citing Celotex, 477 U.S. at 323–31, 106 S.Ct. at 2553–57).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed.R.Civ.P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

*Turnover*

■ An action for turnover related to a debt requires a showing that (a) the debt "is property of the estate" and (b) "is matured, payable on demand, or payable on order." 11 U.S.C. § 542(b). As to the first prong, property is defined broadly to encompass "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541; Howell v. Bank of Am., N.A. (In re Dor-

sey), 497 B.R. 374, 383 (Bankr.N.D.Ga. 2013). As to the second element, a debt that is "presently payable," i.e., "where payment is not subject to any condition precedent" is matured, payable on demand, or payable on order. Miller v. Jannetta (In re Irwin), 509 B.R. 808 (Bankr. E.D.Pa.2014). Courts in the Eleventh Circuit generally follow the majority rule that a debt must be undisputed to be subject to turnover. See, e.g., In re Fontainebleau Las Vegas Holdings, LLC, 417 B.R. 651, 666 (S.D.Fla.2009) aff'd sub nom. Ave. CLO Fund Ltd. v. Bank of Am., NA, 709 F.3d 1072 (11th Cir.2013) ("The turnover provision of [the] Bankruptcy Code applies only to tangible property and money due to debtor *without dispute* which are fully matured and payable on demand.") (emphasis in original).

The debt here is clearly in dispute. Plaintiff alleges that the Six States Agreement resulted in Shechem assuming an obligation owed by NJUN–SE to Debtor, and that Shechem became indebted to Debtor in the amount of two million dollars. Shechem disputes both of these claims, arguing that Debtor had no rights under the Six States Agreement, and that the agreement was not an assumption of NJUN–SE's debt. Because of this dispute, the action for turnover under section 542(b) is not appropriate.

■ Even if the Court were to assume the debt was "mature", Plaintiff still must show that the property to be recovered is property of the estate. Bracewell v. Kelley, 454 F.3d 1234, 1243 (11th Cir.2006) (citing United States v. Whiting Pools, 462 U.S. 198, 199–200, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)) ("[Section] 542(a) authorizes turnover of property in another's possession *only* if it is property of the estate") (emphasis added). Plaintiff seeks turnover of a debt that allegedly arose out

of Article 4.4.1 of the Six States Agreement, which reads as follows:

> In partial satisfaction of the Territory Fee, SHECHEM has purchased certain real property found at 1390 Hillside Drive, Grayson, Georgia 30017 (hereinafter referred to as the "Property") which has been leased to Rocky White ("WHITE") at the express direction of NJUN–SE. The terms of such lease are governed by a separate agreement between SHECHEM and WHITE, a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference. SHECHEM having obtained a loan (hereinafter referred to as the "Loan") in connection with the purchase of the Property and the Loan being secured by the Property pursuant to a Deed to Secure Debt granted by SHECHEM to BB & T, SHECHEM shall be responsible for satisfying the terms of the loan in full. SHECHEM shall transfer ownership of the Property to WHITE within sixty (60) days of the Loan having been satisfied in full and the Deed to Secure Debt having been cancelled by BB & T. In exchange for the purchase and lease of the Property to WHITE by SHECHEM, the sum of Two Million Dollars ($2,000,000) shall be credited toward and shall reduce the Territory Fee immediately upon transfer of ownership of the Property to WHITE. NJUN–SE hereby acknowledges and agrees that it is receiving a benefit from the lease arrangement between SHECHEM and WHITE and that an obligation owed by NJUN–SE to WHITE is being satisfied as a result thereof, and NJUN–SE further waives any right it might have to rescind or otherwise challenge the credit toward the Territory Fee SHECHEM will receive pursuant to this Article 4.4.1.

In the Complaint, Plaintiff argues that this language resulted in Shechem assuming a debt of an unknown amount owed by NJUN–SE to Debtor, that Shechem became obligated to Debtor in the amount of two millions dollars, and that Shechem was thus indebted to Debtor at the time his petition was filed. However, the undisputed facts do not support this argument.

■ First, the language of the agreement does not evidence an obligation of two million dollars owed by Shechem to Debtor. The impact of Article 4.4.1 can be discerned from its plain language. The article states that Shechem has already purchased the Hillside Property and has entered into a lease of the Hillside Property with Debtor. The section also states that once Shechem pays the mortgage on the Hillside Property in full, the property will be transferred to Debtor. Once the property is successfully transferred to Debtor, Shechem will be entitled to take a two million dollar credit against the thirty million dollars that Shechem would be obligated to pay NJUN–SE for the supplier rights under the agreement.

Nothing in Article 4.4.1 indicates that Shechem would become liable to Debtor in the amount of two million dollars upon execution of the Six States Agreement. The two million dollars referenced in Article 4.4.1 is a credit against a fee owed by Shechem to NJUN–SE, and that credit was only available to Shechem if the mortgage on the Hillside Property was paid in full and the property transferred to Debtor. Not only is Debtor not involved in any way with the fee arrangement under the Six States Agreement, but the transfer of the Hillside Property also never occurred, meaning Shechem never actually received the benefit of the two million dollar credit.

■ Second, the agreement also does not evidence an assumption of the debt owed by NJUN–SE to Debtor. The provision clearly states that the transfer of the

house and subsequent two million dollar credit would satisfy an obligation owed by NJUN–SE to Debtor. Nowhere is the debt from NJUN–SE to Debtor described in either nature or amount. The distinction between "assumption" and "satisfaction" of a debt is critical. Assumption involves the act of taking the debt or obligation of another on oneself, such that the entity assuming the debt agrees to pay the debt on behalf of the debtor, see Manget Foundation, Inc. v. White, 101 Ga.App. 239, 241, 113 S.E.2d 235 (1960), while satisfaction involves doing or giving something to fulfil an existing obligation, resulting in the complete discharge of an obligation, see Waters v. Lanier, 116 Ga.App. 471, 473, 157 S.E.2d 796 (1967); see also Black's Law Dictionary (10th ed.2014). There is no evidence before the Court specifying what obligation NJUN–SE owed to Debtor, but the language of Article 4.4.1 unequivocally states that this unknown obligation of NJUN–SE is being *satisfied* by the lease arrangement between Shechem and Debtor—not that the obligation is being *assumed* by Shechem.

■ Furthermore, any rights or obligations created by the execution of the Six States Agreement were nullified with the execution of the PLA. For the PLA to be considered a complete substitute for the Six States Agreement, it must be shown that: (1) a previous valid obligation existed, (2) the parties agreed to the new contract, (3) there is a mutual intention by the parties to substitute the new contract for the old contract, and (4) the new contract is valid. Stewart v. Johnson, 269 Ga.App. 698, 699, 605 S.E.2d 111 (2004). There is no dispute as to the validity of either the Six States Agreement or the PLA, nor is there any dispute regarding the parties agreement to the PLA. The language of Article 11.8 of the PLA plainly indicates that all parties to the agreement intended

for the PLA to fully supersede the Six States Agreement, thus releasing all parties to the Six States Agreement from any obligations created under the Six States Agreement.

The parties do not dispute that the PLA was meant to be a substitute for the Six States Agreement, however Plaintiff argues that the rights of Debtor as a third party beneficiary to the Six States Agreement survived the execution of the PLA because the PLA did not include specific language indicating Debtor released Shechem of the obligation that Shechem owed Debtor. There are two issues with this argument. First, the express terms of the agreement did not allow for any third party beneficiaries. Article 9.8 clearly states that the Six States Agreement is for the sole benefit of the parties who entered the agreement, and not for any third party beneficiary. Debtor was neither a party to the agreement nor a third party beneficiary. Second, as previously discussed, the language of the Six States Agreement did not create any obligations owed to Debtor by Shechem. Therefore, there were no rights available to Debtor that could survive the execution of the PLA.

Although the Complaint focuses on the alleged obligation owed to Debtor under the Six States Agreement, it is nonetheless important to consider the obligations created by the Lease Agreement. While the Lease Agreement did create an obligation between the parties, it did not create an obligation of two million dollars owed by Shechem. Rather, the Lease Agreement called for Shechem to lease the Hillside Property to Debtor rent free and eventually transfer the property to Debtor when Shechem had paid the mortgage on the property in full. In exchange, Debtor would pay taxes, insurance, and any homeowner association fees on the Hillside Property during the term of the

lease. Nothing in the Lease Agreement created an obligation for Shechem to pay two million dollars to Debtor. Furthermore, the Lease Agreement is not an assumption of any debt owed by NJUN–SE to Debtor. While the Lease Agreement does reference the Six States Agreement, the transfer of the Hillside Property never occurred, preventing Shechem from receiving the benefit of the two million dollar credit against the fee Shechem owed NJUN–SE. Finally, any rights under the Lease Agreement were terminated with the execution of the Lease Termination Agreement and the Revised Agreement. Under the Lease Termination Agreement, Debtor, Shechem, Ringo, and NJUN–SE agreed that the lease was terminated as of June 14, 2013 to permit for the sale of the Hillside Property. The Revised Agreement, which superseded the Lease Termination Agreement, confirmed that the Lease Agreement was terminated as of June 14, 2013, and stated that Debtor waived any rights or claim to proceeds from the sale of the Hillside Property.

Shechem has shown that the undisputed material facts do not support a claim for turnover under section 542(b). The Six States Agreement did not create any obligations between Shechem and Debtor, nor did it result in the assumption of a debt owed by NJUN–SE to Debtor. The Lease Agreement, while creating certain obligations, did not create an obligation for two million dollars, and also did not result in the assumption of the debt owed by NJUN–SE to Debtor. Finally, both the Six States Agreement and the Lease Agreement were superseded prior to the petition date. Therefore, Shechem did not owe any debt to Debtor that could be subject to a turnover action as of the petition date, and summary judgment in favor of Shechem on Count 7 of the Complaint is appropriate.

## Open Account

An open account is "an account which has not been finally settled or closed, but is still running or open to future adjustment or liquidation." Altacare Corp. v. Decker, Hallman, Barber & Briggs, P.C., 316 Ga.App. 718, 719, 730 S.E.2d 12 (2012). A suit on open account is a cause of action available to "the provider of goods and services where the price of such goods or services has been agreed upon and 'where it appears that the plaintiff has fully performed [its] part of the agreement and nothing remains to be done except for the other party to make payment.' " Five Star Steel Constr., Inc. v. Klockner Namasco Corp., 240 Ga.App. 736, 738–739, 524 S.E.2d 783 (1999) (quoting Haas v. Jaffe, 45 Ga.App. 11, 12(2), 163 S.E. 226 (1932)). However, "when there is a dispute that goes to either assent to the services, terms of the contract, what work was performed, the quality of the performance, or cost, then suit on account is not the proper procedure for suit, because there is a factual issue other than nonpayment on the account." Altacare Corp., 316 Ga.App. at 719, 730 S.E.2d 12 (citing Five Star Steel, 240 Ga.App. at 738–39, 524 S.E.2d 783).

Shechem has shown that the undisputed facts do not support a suit on open account. As discussed in the previous section, Shechem did not owe Debtor any debt under either the Six States Agreement or the Lease Agreement as of the petition date. Debtor was neither a party nor a beneficiary to the Six States Agreement, nor did the Six States Agreement independently create an obligation for two million dollars between Shechem and Debtor. Furthermore, Shechem did not assume the obligation owed to Debtor by NJUN–SE, And while an obligation was created by the Lease Agreement, it was not an assumption of the debt owed by

NJUN–SE to Debtor. Because Shechem did not owe Debtor for any obligation at the time Debtor's petition was filed, a suit on open account is not appropriate, and summary judgment should be granted to Shechem on Count 8 of the Complaint.

*Unjust Enrichment*

Although Georgia law states that unjust enrichment is not available if there is a valid written contract between parties, Ga. Dept. of Cmty. Health v. Data Inquiry, 313 Ga.App. 683, 687, 722 S.E.2d 403 (2012), Georgia law also permits a plaintiff to plead alternative theories of recovery, such that "if the factfinder concludes that [the defendant] did not breach any express contract, questions of fact would exist as to whether [the defendant] is liable under [the theory of unjust enrichment]." Campbell v. Ailion, 790 S.E.2d 68, 74, 2016 WL 3207905, at *5 (Ga.Ct.App. June 8, 2016). A claim for unjust enrichment exists "where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant, that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof, and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it." Campbell, 790 S.E.2d at 73, 2016 WL 3207905, at *4 (citing Crook v. Foster, 333 Ga.App. 36, 39, 775 S.E.2d 286 (2015)).

The facts material to a claim for unjust enrichment are still in dispute. The analysis of the agreements entered into by the parties in this case only shows what was supposed to occur between the parties; however, the parties still dispute what rights and obligations actually arose, what interests were transferred as a result of the various agreements, and the value of those rights. Additionally, these agreements—in particular the Lease Termination Agreement and Revised Agreement—resulted in Debtor relinquishing potential rights in certain property. Whether any party benefited from that relinquishment is disputed and remains to be resolved. Therefore, summary judgment as to Plaintiff's claim for unjust enrichment is not appropriate at this time. Given the narrow scope of the legal question raised in Sheehan's Motion, this Order should not be construed as a ruling on the merits of Count 9 of the Complaint. Rather, the denial of Shechem's Motion with respect to Count 9 is without prejudice to any party filing any additional motions addressing the merits of Plaintiff s unjust enrichment claim.

## CONCLUSION

Based on the foregoing, Shechem's Motion is granted in part and denied in part. It is hereby **ORDERED** that Shechem's Motion is **GRANTED** with respect to Count 7 and Count 8 of the Complaint;

**FURTHER ORDERED** that Shechem's Motion is **DENIED WITHOUT PREJUDICE** with respect to Count 9 of the Complaint.

**IT IS ORDERED.**