A. Jay Cristol, Judge, United States Bankruptcy Court
THIS MATTER came before the Court at a hearing on September 11, 2018 ("Hearing") upon the Motion to Compel Arbitration and Stay Pending Adversary Proceeding ("Motion") [ECF No. 10] filed by Cadwalader, Wickersham & Taft LLP ("Cadwalader") and the Response to the Motion ("Response") [ECF No. 22] filed by Plaintiff, Maria Yip, as Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy estates of Providence Financial Investments, Inc. ("Providence Financial") and Providence Fixed Income Fund, LLC ("Providence Fund" and, together with Providence Financial, the "Debtors"). The Court having carefully reviewed and *887 considered the Motion, Response, Court file,[1] argument of counsel and being otherwise advised the premises, grants the Motion for the following reasons.
I. FACTUAL BACKGROUND
On August 21, 2018, Trustee filed her Amended Complaint against Defendants, Cadwalader, Grant Thornton LLP ("GT"), and Greene Espel, PLLP ("GE") (collectively the "Defendants") relating to pre-petition professional services that Defendants provided to Debtors ("Complaint") [ECF No. 7]. As against all Defendants, the Trustee asserts a claim for aiding and abetting fraud on account of such pre-petition services. The Trustee also seeks an accounting and turnover of Debtors' property allegedly still in Defendants' hands. No other claims are asserted against Cadwalader. The allegations in the Complaint, summarized below, are assumed as true solely for purposes of the Court's analysis.
The Debtors were part of a global Ponzi scheme that from 2010 to 2016 raised over $64 million in the United States and $150 million worldwide. Id. at ¶¶ 23, 37. Antonio Buzaneli ("Buzaneli"), who has since pled guilty to thirteen counts of criminal misconduct, was the Chief Executive Officer ("CEO") of the Debtors, as well as the CEO of numerous affiliates of the Debtors in the United States, and throughout the world, including London, Hong Kong, Taipei, Shanghai, Suzhou, Singapore, Cayman Islands, Brazil, Guernsey, Canada, Istanbul, Dubai, and Panama (collectively the "Providence Entities"). Id. at ¶¶ 24, 31. The Providence Entities commingled funds and were operated without corporate formalities such that their independent identities were non-existent and they were merely alter egos of the Debtors. Id. at ¶¶ 28, 97. The Providence Entities recruited investors to purchase promissory notes, the proceeds of which would be used to provide working capital in the form of intercompany loans to various businesses in Brazil. Id. at ¶¶ 3, 49. The Brazilian companies would then use the intercompany loan proceeds to acquire receivables or other financial instruments. Id. at ¶ 49. In total, the Providence Entities promised annual returns of 12% to 13% to the investors through the investments in factoring accounts receivable in the Brazilian businesses. Id. at ¶¶ 3, 49. The investors' funds, however, were instead diverted to other uses, some being used to pay principal and interest payments to old investors (the "Fraud"). Id. at ¶¶ 50, 51.
On January 31, 2016, the U.S. Securities and Exchange Commission ("SEC") served several of the Providence Entities with an SEC Subpoena requesting various financial, accounting, and tax records, as well as documentation on the investor promissory notes. Id. at ¶ 60. The SEC also requested a presentation addressing the details on the transactions involving the Providence Entities. Id. at ¶ 63.
In response to the Subpoena, Providence Financial and non-Debtor Providence Entity Providence Global, Inc. ("Providence Global") engaged Cadwalader "in connection with responding to civil subpoenas *888 issued to some of the Providence Entities by the U.S. Securities and Exchange Commission." Id. at ¶ 64. On February 1, 2016, in order to document the engagement, Buzaneli, as Chief Executive Officer of Providence Financial and Providence Global, signed an engagement letter with Cadwalader ("Engagement Letter"). Motion at Ex. A. The Engagement Letter, in the section titled "Resolution of Disputes - Mediation and Arbitration" ("Arbitration Provision") provides that
"any dispute arising out of or relating to [Cadwalader's] rendering professional services to you or [Cadwalader's] fees, disbursements, and charges will first be submitted to private, non-binding mediation ...." Engagement Letter at 5. "If resolution through mediation is not achieved, any such dispute will be finally resolved by private, confidential binding arbitration ... [which] will be conducted in New York City ...." Id. "Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation or enforceability of any of these procedures shall be governed by the Federal Arbitration Act and resolved by the arbitrators." Id.
In addition, Buzaneli, on behalf of the Providence Entities, also engaged GE and GT, to respond to the Subpoena. Compl. at ¶ 65. In that capacity, GT representatives interviewed Buzaneli and other officers of the Providence Entities regarding their use of investor funds. Id. Trustee alleges that it was during that investigation that GT purportedly learned of the Fraud, and in late February 2016, shared its findings with GE and Cadwalader. Id. at ¶¶ 75, 76.
Pursuant to the Engagement Letter, Cadwalader, together with GT and GE, prepared a PowerPoint presentation, as requested by the SEC, and on March 21, 2016, Cadwalader, GT, and GE made the presentation to representatives of the SEC in Chicago. Id. at ¶¶ 79, 82. The Trustee alleges that the Defendants "took painstaking efforts to omit any references to fraud as they collaboratively refined the PowerPoint presentation" and that because of such efforts, Buzaneli continued to solicit and enroll new investors, continued to transfer funds between the Providence Entities, and continued to utilize the funds for his personal use. Id. at ¶¶ 80, 89; see also Motion at 5.
Two and half months later, on June 7, 2016, the SEC filed a complaint in the United States District Court for the District of Minnesota, against the Debtors and other Providence Entities, alleging violation of various securities laws. Id. at ¶ 86. A month and a half after that filing, Debtors filed separate voluntary petitions for relief under Chapter 7, title 11, United States Code, which cases are being jointly administered.
On August 21, 2018, Trustee filed her Amended Complaint, which asserts the following claims against the Defendants, including Cadwalader: Count I for Aiding and Abetting Fraud ("Aiding and Abetting Claim"), Count VIII for Turnover ("Turnover Claim"), and Count IX for Equitable Accounting ("Accounting Claim") (collectively the "Cadwalader Claims"). Counts II through VII consist of fraudulent transfer counts asserted against only GE.
In its Motion, Cadwalader argues that its Arbitration Provision specifically encompasses the Cadwalader Claims, as they are disputes "arising out of or related to [Cadwalader's] rendering professional services to" Providence Financial pursuant to the Engagement Letter and as such, are subject to binding arbitration pursuant to the Federal Arbitration Act ("FAA") and applicable law. Motion at ¶ 3. Cadwalader also argues in response to the Trustee, that even though Providence Fund was not a signatory to the Engagement Letter, the *889 claims asserted by the Trustee on behalf of Providence Fund are arbitrable because Providence Fund's claims against Cadwalader are inextricably intertwined with Providence Financial's claims against Cadwalader. Reply at 3-6.
Trustee opposes Cadwalader's Motion to Compel, arguing that the Arbitration Provision does not apply to the Cadwalader Claims because the Aiding and Abetting Claim is really a tort claim that has no relationship to the Engagement Letter. Response, ECF No. 22, at § 1. The Trustee also argues that there is an inherent conflict between arbitrating the Cadwalader Claims and the underlying purpose of the Bankruptcy Code because sending the Cadwalader Claims to arbitration, while retaining the claims against the remaining Defendants, would be inefficient, risk inconsistent results, and would be too costly to the Trustee. Id. at § 2. Lastly, the Trustee argues that the Court cannot order Providence Fund to arbitrate since it was not a signatory to the Engagement Letter. Id. at 15-16; Response to Motion to Clarify at 3-7. The Court addresses each argument in turn.
II. ANALYSIS
A. The Arbitration Provision is Valid and Enforceable
Under the FAA, written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. The FAA embodies a liberal federal policy in favor of arbitration. See Whiting-Turner Contracting Co. v. Elec. Mach. Enters. (In re Elec. Mach. Enters.) , 479 F.3d 791 (11th Cir. 2007) (hereinafter " Whiting-Turner ").
In Whiting-Turner , the seminal case on enforceability of arbitration agreements in the Eleventh Circuit, the court first looked to whether the parties "entered into a valid arbitration agreement to resolve any and all claims or issues between them." Whiting-Turner , 479 F.3d at 795. In both the Southern District of Florida and the Eleventh Circuit, the issue of whether the parties entered into a valid arbitration agreement to resolve any and all claims or issues between them - effectively, whether they "have agreed to arbitrate" - is a "gateway" determination that the parties can contractually delegate to the arbitrator. See CaringOnDemand, LLC v. Ventive LLC , 2018 WL 3093543, No. 18-cv-80211-BLOOM/Reinhart, at *3 (S.D. Fla. June 22, 2018) (citing Rent-A-Center, W., Inc. v. Jackson , 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ). As the Supreme Court recognized, "parties can agree to arbitrate 'gateway' provisions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, 561 U.S. at 68-69, 130 S.Ct. 2772 (citing Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 83-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ); see also Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion) ("[C]ourts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clear and unmistakable' evidence to the contrary )." (Emphasis added and citation removed) ).
The Eleventh Circuit's opinion in JPay, Inc. v. Kobel also recognized the ability of parties to " 'agree to arbitrate 'gateway' questions of 'arbitrability' because 'arbitration is a matter of contract.' " 904 F.3d 923, 936 (11th Cir. 2018) (quoting Rent-A-Center , 561 U.S. at 68-69, 130 S.Ct. 2772 ). In its analysis, the Eleventh Circuit confirmed that this judicial precedent mandated that the court recognize the parties' clear and unmistakable intent to refer gateway issues of arbitrability to an arbitrator - going so far as to quote "comparable language [that] expressed a clear and *890 unmistakable intent to delegate questions of arbitrability in general." Id. at 939. The "comparable language" is almost identical to the gateway provision in this case.
In the present case, it is clear and unmistakable that Providence Financial and Cadwalader delegated the gateway determinations to the arbitrator ("Gateway Provision"). The Gateway Provision states:
"[a]ny issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation or enforceability of any of these procedures shall be governed by the Federal Arbitration Act and resolved by the arbitrators. "
Engagement Letter at 5 (emphasis added). The parties not only agreed to arbitrate whether they agreed to arbitrate in the first place, but also whether the Arbitration Provision covers a certain controversy.
The Trustee argues that the Gateway Provision only addresses "[a]ny issue concerning the extent to which ... any dispute is subject to arbitration..." Transcript of Hearing, ECF No. 37, p. 12, ll. 22-24 (emphasis added). The term "any dispute," the Trustee continues, must be read within the confines of the first paragraph of the Arbitration Provision, in which the parties agreed to arbitrate "any dispute arising out of or relating to [Cadwalader's] rendering professional services to [Providence Financial]. " Id. at p. 13, ll. 1-7 (emphasis added). Thus, according to the Trustee, since the Cadwalader Claims do not fall under the description of "any dispute arising out of or relating to [Cadwalader's] rendering of professional services to [Providence Financial]," they are similarly not subject to the Gateway Provision. The Court disagrees. If the parties meant to include in the Gateway Provision only "any dispute arising out of or relating to [Cadwalader's] rendering of professional services to [Providence Financial]" they would have so stated. Instead, the parties included the term "any dispute" in the Gateway Provision, without any clarifying language to follow. The Court believes the unequivocal language of the Arbitration and Gateway Provisions allows the arbitrators to decide, inter alia , whether the parties agreed to arbitrate the Cadwalader Claims.
The Trustee also argues that because the Cadwalader Claims include a tort claim, they cannot be referred to arbitration. Response at § 1. The Trustee's argument is unpersuasive. The parties agreed to arbitrate "any dispute arising out of or relating to [Cadwalader's] rendering professional services" to Providence Financial. While the Trustee's Aiding and Abetting Claim may not arise out of the Engagement Letter, it most certainly is related to the Engagement Letter. Cadwalader was engaged to respond to the Subpoena on behalf of Providence Financial, including making a presentation to the SEC on behalf of Providence Financial relating to the Subpoena. Compl. at § 60-62. The Trustee's characterization that the presentation to the SEC and the preparation leading up to presentation somehow allegedly provided "substantial assistance" to the Fraud, does not negate or diminish the simple fact that Cadwalader was still "rendering professional services" to Providence Financial.
The Trustee cited case law to support the argument that an arbitration clause in a contract does not cover a dispute concerning a tort claim, but those cases do involve the type of "gateway provision" discussed herein. In this case, the parties here delegated to the arbitrators the determination of whether a certain dispute is subject to arbitration. Accordingly, the Court refers the issue of whether the Cadwalader Claims are subject to arbitration - to the arbitrators. Rent-A-Center, 561 U.S. at 68, 130 S.Ct. 2772 ("An agreement *891 to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); see also Jones v. Waffle House, Inc. , 866 F.3d 1257, 1263, 1267 (11th Cir. 2017) (enforcing a delegation provision that stated, in pertinent part, "[t]he Arbitrator ... shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of" the arbitration agreement (emphasis added) ); see also Serrano v. Tuition Options, LLC , No. 17-cv-24443-GAYLES, 2018 WL 3145809, at *2-*3 (S.D. Fla. June 27, 2018) (granting motion to compel arbitration where gateway provision "evidence[d] a clear and unmistakable intent by the parties to arbitrate all gateway issues" "such that the arbitrator must resolve in the first instance all disputed issues as to arbitrability or the existence, scope, validity, construction or enforceability " of the arbitration agreement at issue (emphasis added) ).
B. There is No Inherent Conflict Between Arbitration of the Cadwalader Claims and the Underlying Purpose of the Bankruptcy Code
The Court must determine whether an "inherent conflict" exists between enforcing the Arbitration Provision as to the Cadwalader Claims and the purpose behind the Bankruptcy Code. See Whiting-Turner , 479 F.3d at 796. "Courts addressing the issue of whether arbitration inherently conflicts with the Bankruptcy Code distinguish between core and non-core proceedings" and "bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding." Id. ; see also Carn v. Wall & Assoc., Inc. (In re Tomberlin ), 2017 WL 410337, Adv. Pro. 16-01115, at *2 (Bankr. M.D. Ala. Jan. 30, 2017) (same). "Indeed, a bankruptcy court must enforce an arbitration agreement relating to a non-core proceeding." AASI Creditor Liquidating Trust v. Peoplesoft, USA, Inc., et al. (In re All Am. Semiconductor, Inc. ), 2010 WL 2854153, Adv. No. 09-1466-BKC-LMI, at *6 (Bankr. S.D. Fla. July 20, 2010).
However, in the case of a core proceeding, the bankruptcy court must "analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." Whiting-Turner , 479 F.3d at 797. A non-exhaustive list of "core-proceedings" is set forth in 28 U.S.C. § 157(b)(2). A proceeding is "core" if: (1) it involves a right created by federal bankruptcy law; or (2) it would arise only in bankruptcy. See Id. at 797. "A proceeding is not core '[if] the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy.' " Id. (citation omitted); see also In re Harrelson , 537 B.R. 16, 23 (Bankr. M.D. Ala. 2015) (noting that non-core proceedings may be "related to" the debtor's bankruptcy).
In determining whether a claim is core or non-core, courts are not bound by a plaintiff's characterization and may look beyond the label asserted in the complaint to ascertain the "claim's true substance." McCallan v. Hamm , Case No. 2:11-CV-784-MEF, 2012 WL 1392960, at *5 (M.D. Ala. Apr. 23, 2012) ; see also Tabas v. Fordberry PLC, 395 B.R. 182, 193 (Bankr. S.D. Fla. 2008) ("Finally, arbitrability turns on the underlying facts of plaintiff's claims, not on the legal labels the plaintiff attaches to them."). For the reasons set forth below, the Cadwalader Claims, asserted on behalf of Providence Financial's bankruptcy estate, are subject to arbitration because they are non-core claims.
*892 1. The Aiding and Abetting Claim and Accounting Claim are Non-Core Because They Involve No Rights Created under the Bankruptcy Code and They Could Exist Outside of the Bankruptcy Proceeding
The Trustee's Aiding and Abetting Claim and Accounting Claim against Cadwalader were not created by the Bankruptcy Code and could arise outside of the bankruptcy context. As to the Aiding and Abetting Claim, the Eleventh Circuit has found that "[a]lthough no Florida court has explicitly recognized a cause of action for aiding and abetting fraud, Florida courts have assumed that the cause of action exists." Chang v. JPMorgan Chase Bank , 845 F.3d 1087, 1097 (11th Cir. 2017). Indeed, "a tort claim for aiding and abetting fraud has three elements: (1) the existence of 'an underlying fraud'; (2) that '[t]he defendant had knowledge of the fraud'; and (3) that '[t]he defendant provided substantial assistance to advance the commission of the fraud.' " Id. at 1097-98 (quoting ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md. , 917 So.2d 368, 372 (Fla. 5th DCA 2005). Thus, the Aiding and Abetting Claim constitutes a State law tort claim that neither invokes the substantive rights and powers created by the Bankruptcy Code nor depends upon the existence of a bankruptcy proceeding for its prosecution.
As to the Accounting Claim, Florida's Third District Court of Appeal has recognized a cause of action for an accounting when " 'the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity.' " Bankers Trust Realty, Inc. v. Kluger , 672 So.2d 897, 898 (Fla. 3d DCA 1996) (quoting F.A. Chastain Constr., Inc. v. Pratt, 146 So.2d 910, 913 (Fla. 3d DCA 1962) ). The Florida Supreme Court has also acknowledged such a cause of action. See R.O. Holton & Co. v. Hull , 140 Fla. 687, 192 So. 229 (1939). Thus, like the Aiding and Abetting Claim, the Accounting Claim neither invokes the substantive rights and powers created by the Bankruptcy Code nor depends on the existence of a bankruptcy proceeding for its prosecution. Accordingly, the Aiding and Abetting Claim and the Accounting Claim constitute non-core claims that will be referred to arbitration.
2. The Turnover Claim as a Non-Core Claim
The Turnover Claim against Cadwalader, as alleged, appears from its title to be core. However, " '[t]he label a party attaches to a claim does not require the court to wear blinders as to that claim's true substance.' " Tomberlin , 2017 WL 410337 at *3 (quoting Harrelson , 537 B.R. at 24 )(fraudulent transfer and turnover claims under 11 U.S.C. §§ 542, 548 were subject to arbitration because they were "essentially extensions of [the underlying] breach of contract claim ...."). Here, the Trustee seeks turnover of funds purportedly received by Cadwalader pursuant to the terms of the Engagement Letter. Cadwalader disputes the Trustee's right to recover the claimed debt, asserting it never received any fee retainers or payments for attorneys' fees from the Debtors and that it is not holding any property of the Debtors. Motion at Ex. B.
"Courts in the Eleventh Circuit generally follow the majority rule that a debt must be undisputed to be subject to turnover." In re White , 555 B.R. 883, 888 (Bankr. N.D. Ga. 2016) ; see also In re Fontainebleau Las Vegas Holdings, LLC , 417 B.R. 651, 666 (S.D. Fla. 2009), aff'd sub nom. Ave. CLO Fund Ltd. v. Bank of Am., NA , 709 F.3d 1072 (11th Cir. 2013) ("The turnover provision of Bankruptcy Code applies *893 only to tangible property and money due to debtor without dispute which are fully matured and payable on demand."); In re Conex Holdings, LLC , 518 B.R. 792, 801 (Bankr. D. Del. 2014) ("A properly pleaded complaint asserting a claim for turnover must allege an undisputed right to recover the claimed debt."). "Turnover is not appropriate where there is a legitimate dispute over ownership of the property." Conex , 518 B.R. at 801. Thus, in light of the disputed nature of the Trustee's claim, the "true substance" of the Turnover Claim appears to be an extension of the Plaintiff's Aiding and Abetting Claim and/or a breach of contract claim. As such, the Turnover Claim will be referred to arbitration.
3. Referring Turnover Claim to Arbitration Does Not Inherently Conflict with the Purpose of the Bankruptcy Code
Even if the Turnover Claim were to be considered a core claim, the Turnover Claim would still be subject to arbitration, absent some inherent conflict between the enforcement of the provision and the Bankruptcy Code. See Whiting-Turner , 479 F.3d at 796 (citing Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum) , 118 F.3d 1056, 1067 (5th Cir. 1997) ); see also Harrelson , 537 B.R. at 26 ("Even if a claim is found to constitute a core proceeding, it must still be arbitrated unless" enforcement would inherently conflict with the Bankruptcy Code.); In re Pearl Co., Inc., et al. , 435 B.R. 742, 744 (Bankr. S.D. Fla. 2010) ("Bankruptcy courts should enforce arbitration agreements (even in core matters) so long as they do not conflict with the underlying purposes of the Bankruptcy Code."). If any conflict exists, it must be significant enough to rise to a level of "inherent conflict." See In re Shores of Pan., Inc. , 387 B.R. 864, 866-67 (Bankr. N.D. Fla. 2008). See also . Friedman's, Inc. v. Ernst & Young, LLP (In re Friedman's, Inc.) , 372 B.R. 530, 543 (Bankr. S.D. Ga. 2007) ("[t]he general rule that courts are to enforce arbitration agreements despite the possibility that such an action would result in inefficient litigation in multiple venues has been applied to bankruptcy cases;" thus, "the possibility of piecemeal litigation standing alone is a suspect rationale for finding an inherent conflict between arbitration and the purposes of the Bankruptcy Code").
Here, the Trustee contends that Cadwalader "benefited from [its] participation in concealing the Ponzi scheme [by earning] income from professional, accounting, and/or legal fees from the Providence Entities." Compl. at ¶ 94. As pled, the Turnover Claim appears "directly connected to the facts undergirding" the Aiding and Abetting Claim, and the Aiding and Abetting Claim will "rise and fall together" with the Turnover Claim. Harrelson , 537 B.R. at 26-27.
C. Possible Inconsistent Results, Inefficiency, and Costs Do Not Outweigh the Liberal Policy in Favor of Arbitration
The Eleventh Circuit has noted, "[i]f otherwise required, arbitration must be ordered 'even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.' " Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1117 (11th Cir. 2001) (quoting Dean Witter Reynolds v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ). The United States Supreme Court stated, "[t]he legislative history of the [FAA] establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter , 470 U.S. at 219, 105 S.Ct. 1238. Requiring a *894 litigant to resolve related disputes in different forums "occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." Moses H. Cone Memo. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis in original). The fact that such a result may require a litigant to incur higher fees and costs than would otherwise be required in the absence of arbitration is a necessary corollary to the liberal federal policy in favor of arbitration.
The Trustee argues that referring the Cadwalader Claims to arbitration would be inefficient, risk inconsistent results, and would force the Trustee to litigate the Cadwalader Claims "in a distant forum and under unfamiliar rules, at appreciable expense to the estate and with considerable delay." Response at 14. However, these considerations do not outweigh the FAA's clear mandate. The Trustee brought these claims, accepting the risk of enforcement of arbitration. As the Court noted at the Hearing, "if debtors could make agreements which they could not afford to defend, they would emasculate the legal system. If they made a bad deal, that's unfortunate ...." Transcript of Hearing at p. 17, ll. 7-10.
D. Providence Fund Will Not Be Compelled to Arbitrate
The Trustee in this case represents two related but distinctly separate bankruptcy estates, whose cases are being jointly administered, but are not substantively consolidated. The claims by the Trustee are asserted on behalf of each debtor's estate, for the benefit of the creditors of each respective estate. The Trustee argues that regardless of whether the Court orders Providence Financial to arbitrate the Cadwalader Claims, the Court cannot order Providence Fund, a non-signatory to the Engagement Letter, to arbitrate the Cadwalader Claims. Response at 15-16; Response to Motion to Clarify at 3-7. The Trustee relies on Lawson v. Life of the S. Ins. Co. , 648 F.3d 1166, 1167-68 (11th Cir. 2011) ("[O]ne who is not a party to an agreement cannot enforce its terms against one who is a party.").
Defendant Cadwalader, on the other hand, seeks to compel arbitration against the non-signatory plaintiff Trustee. Cadwalader cites principles of estoppel as a basis to require arbitration of claims involving nonparties to arbitration agreements, relying on MS Dealer Serv. Corp. v. Franklin , 177 F.3d 942, 947 (11th Cir. 1999), abrogated on other grounds , Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (addressing whether a non-signatory defendant could compel arbitration, the court reasoned that, "only by permitting the non-signatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.").[2]
While the claims asserted by the Trustee in the Complaint, on behalf of the estate of non-signatory Providence Fund, indeed appear to mirror Providence Financial's claims that are subject to arbitration, and the Court recognizes that arbitrating the Providence Financial claims against Cadwalader without arbitrating the Providence Fund claims may risk inconsistent results, the Court does not find these considerations to be a valid basis to force a party to submit a dispute to arbitration when that party did not intend and agree to arbitrate. See , Seifert v. U.S. Home Corp. , 750 So.2d 633, 636 (Fla. 1999). It is apparent from the record that the parties did not agree to arbitrate their claims. Cadwalader and Providence Fund could *895 have entered into an arbitration agreement, as Cadwalader did with Providence Financial, but they did not. Without such an agreement, the Court cannot conclude that the parties intended and agreed to arbitrate their claims. Thus, Providence Financial being the only signatory to the Engagement Letter containing the arbitration provision, only Providence Financial is compelled to arbitrate its claims against Cadwalader.
E. The Trustee's Claims, on Behalf of the Providence Financial Bankruptcy Estate, Against Cadwalader are Stayed, Pending Arbitration
Cadwalader further seeks a stay of this adversary proceeding, in its entirety, pending arbitration of the Trustee's claims against it in the Providence Financial case. Cadwalader cites the FAA to support its position. 9 U.S.C. § 3. The Court agrees that the FAA provisions require the Trustee's claims against Cadwalader on behalf of the Providence Financial estate to be stayed, but the Court does not read the FAA provisions so expansively as to require a stay of the entire adversary case. Accordingly, the claims asserted by the Trustee on behalf of Providence Financial's estate against Cadwalader, which are subject to arbitration as stated herein, are stayed pending arbitration. However, all other claims by the Trustee on behalf of Providence Financial's estate against other third parties that are not subject to arbitration shall not be stayed. So too, all claims by the Trustee on behalf of the estate of Providence Fund against Cadwalader and/or other third parties are not stayed. It is therefor
ORDERED AND ADJUDGED that the Motion to Compel is GRANTED IN PART as follows:
1. The Trustee shall initiate arbitration of all claims by and on behalf of the Providence Financial bankruptcy estate against Cadwalader, pursuant to the terms of the Engagement Letter, within thirty (30) days of the entry of this Order.
2. All claims and litigation with respect to the Trustee's claims on behalf of Providence Financial against Cadwalader in this adversary proceeding are STAYED pending the resolution of arbitration.
3. The Expedited Motion for Clarification is DENIED AS MOOT.
ORDERED.

As noted in footnote 1 to the Motion, Cadwalader simultaneously filed an Expedited Motion to Stay the Adversary Proceeding Pending Adjudication of the Motion to Compel ("Motion to Stay") [ECF No. 11]. On September 11, 2018, the Court granted the Motion to Stay, but that parties have sought clarification with respect to the scope of the Court's ruling. On September 12, 2018, Cadwalader filed its Expedited Motion for Clarification of Ruling on the Motion to Stay ("Motion to Clarify") [ECF No. 25], Trustee filed her Response to the Motion to Clarify ("Response to Motion to Clarify") [ECF No. 26], and Cadwalader filed its Reply to the Response to Motion to Clarify ("Reply") [ECF No. 28]. The Court has carefully reviewed and considered these papers as well.

See also , Marcus v. Fla. Bagels, LLC , 112 So.3d 631, 634 (Fla. 4th DCA 2013) ; Kolsky v. Jackson Square, LLC , 28 So.3d 965, 969-70 (Fla. 3d DCA 2010).